IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SUREFOX NORTH AMERICA INC. AND XENTURE INC.,

Plaintiffs,

v.

SCIATH SECURITY MANAGEMENT GROUP, LLC AND SCIATH SECURITY, LLC,

Defendants.

C.A. No. 25-106-JLH-LDH

FILED

FEB - 9 2026

U.S. DISTRICT COURT DISTRICT OF DELAWARE

**REPORT AND RECOMMENDATION**

Pending before the Court are Defendant Sciath Security Management Group, LLC's ("SSMG") Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss (D.I. 34), and Defendant Sciath Security, LLC's ("Sciath Security") Motion to Dismiss Plaintiffs' First Amended Complaint (D.I. 31). This action, including these pending motions, was referred to me on September 18, 2025. (D.I. 51). On February 4, 2026, the parties stipulated to Sciath Security's dismissal from this action (D.I. 52). Accordingly, I recommend denying Sciath Security's motion to dismiss as moot. Additionally, I recommend denying SSMG's motion to compel arbitration and motion to dismiss without prejudice to renew after limited discovery for the following reasons.

## I. BACKGROUND

Plaintiffs Surefox North America Inc. ("Surefox NA") and Xenture Inc. ("Xenture," and collectively with Surefox NA, "Plaintiffs" or "Surefox") are affiliated entities engaged in insurance-related services and acquisition strategies. (D.I. 28 ¶¶ 1, 14–16, 36). Beginning in 2022, Surefox developed a confidential strategy to acquire other security firms. (*Id.* ¶ 42). Surefox

engaged a consulting firm, Purpose Equity, to identify targets. (*Id.* ¶ 44). Purpose Equity identified over 500 targets, and Surefox narrowed its focus to specific companies, including Kellington Protection Service, LLC ("Kellington"), REDCON Solutions Group ("REDCON"), StaffWizard, LLC, and Cold Bore Capital. (*Id.* ¶¶ 50–51, 58, 64–69). Surefox conducted due diligence and confidential valuations of these targets. (*Id.* ¶¶ 55, 63, 68).

David Murray served in various general counsel roles for Surefox NA and Xenture. (*Id.* ¶¶ 1, 30, 36). Wyatt Huls served as Senior Director of Operations and Intel for Surefox NA. (*Id.* ¶¶ 1, 27). In their roles, they had access to Surefox's "proprietary and confidential information, including trade secrets" related to Surefox's "confidential business plan to pursue a series of aggressive and strategic mergers and acquisitions." (*Id.* ¶¶ 1, 2, 25–28, 30–32, 38–41).

Both Huls and Murray executed various agreements as part of their employment. Specifically, Murray entered into an Employment Agreement with Surefox NA ("Surefox NA Employment Agreement"), as did Huls, both of which contained various confidentiality, non-solicitation, and non-disparagement obligations. (*Id.* ¶¶ 26, 31). Murray also entered into various agreements with Xenture, including (1) the Full Time Employment Offer Letter – General Counsel; (2) the Employment Agreement – Xenture Inc ("Xenture Employment Agreement"); and (3) the Confidential Information Non-Disclosure Agreement – Xenture. Surefox explains that in these agreements, Murray undertook for Xenture the same contractual obligations as he had for Surefox NA. (*Id.* ¶ 38).

In late 2023, Murray and Huls resigned from their positions. (*Id.* ¶¶ 73–74). In connection with Murray's separation from employment, Defendants explain that Murray and Xenture executed a "Severance Agreement and Mutual General Release of All Claims" ("Severance Agreement") on October 20, 2023. (D.I. 35 at 1). The Severance Agreement contains an

arbitration provision requiring arbitration of "all disputes . . . arising out of or relating to Mr. Murray's employment with Xenture Inc and/or its affiliates and the separation of that employment relationship." (*Id.* at 4). Additionally, as part of his separation from employment, Murray drafted a "Continuity Document," which Plaintiffs describe as containing confidential and proprietary information concerning Plaintiffs' acquisition strategies, potential targets, valuations, and integration planning. (D.I. 28 ¶ 72).

On the day of his resignation, Murray founded Defendant SSMG. (*Id.* ¶ 85). Prior to his resignation from Surefox NA, Huls founded Vigilant North, LLC ("Vigilant North"). (*Id.* ¶ 87). Plaintiffs allege that Murray and Huls (on behalf of SSMG and Vigilant North) copied their confidential acquisition strategies to acquire the same security services companies being pursued by Plaintiffs, including Kellington and REDCON. (*Id.* ¶¶ 45, 49–52, 75–95, 107–108). Murray and Huls became Sciath Security's CEO and COO, respectively. (*Id.* ¶ 102).

Plaintiffs initiated this action on January 1, 2025 (D.I. 1) and later amended their complaint (D.I. 28), alleging that Defendants orchestrated a scheme to usurp Plaintiffs' corporate opportunities. The First Amended Complaint asserts claims for misappropriation of trade secrets under the Delaware Uniform Trade Secrets Act ("DUTSA"), 6 *Del. C.* § 20 (Count I); tortious interference with prospective business relations (Count II); tortious interference with existing contracts (Count III); civil conspiracy (Count IV); and unjust enrichment (Count V). On May 2, 2025, SSMG moved to compel arbitration of the claims contained in the First Amended Complaint, or, in the alternative, to dismiss the First Amended Complaint for failure to state a claim. (D.I. 34). Sciath Security also moved to dismiss the First Amended Complaint for failure to state a claim on May 2, 2025, (D.I. 31), but on February 4, 2026, the parties stipulated to Sciath Security's dismissal from this action. (D.I. 52).

## II. LEGAL STANDARD

### A. Motion to Compel Arbitration

"The Federal Arbitration Act reflects the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *In re Remicade (Direct Purchaser) Antitrust Litig*., 938 F.3d 515, 519 (3d Cir. 2019) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Its primary substantive provision says that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It requires that the Court, "upon being satisfied that [an] issue involved in [a] suit or proceeding is referable to arbitration" under an arbitration agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C. § 3. "A court can compel a party to arbitrate only if the party agreed to arbitration." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 142 (3d Cir. 2022). "A party agrees to arbitrate if (1) 'there is a valid agreement to arbitrate between the parties and, if so, (2) . . . the merits-based dispute in question falls within the scope of that valid agreement." *Id.* (quoting *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)).

### B. Rule 12(b)(6)

In reviewing a motion filed under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those

allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The complaint need not contain detailed factual allegations, but conclusory allegations and "formulaic recitation[s] of the elements of a cause of action" are insufficient to give the defendant fair notice of the nature of and grounds for the claim. *Twombly*, 550 U.S. at 555. The complaint must contain facts sufficient to show that a claim has "substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). While this plausibility standard requires more of the complaint than allegations supporting the mere possibility that the defendant is liable as alleged, plausibility should not be taken to mean probability. *Twombly*, 550 U.S. at 545. A claim is facially plausible, and the standard is satisfied, when the claim's factual allegations, accepted as true, allow the court to reasonably infer that the defendant is liable as alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 1948 (2009).

## III. DISCUSSION

SSMG moves to compel arbitration on all claims asserted against it in view of the Severance Agreement between Murray and Xenture. (D.I. 35 at 2–8). In response, Plaintiffs maintain that SSMG cannot compel Xenture to arbitration because Xenture did not agree to arbitrate disputes against SSMG. (D.I. 43 at 3).

"A party agrees to arbitrate if (1) 'there is a valid agreement to arbitrate between the parties and, if so, (2) . . . the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote*, 769 F.3d at 220.

SSMG is neither a party nor a signatory to the Severance Agreement that contains the arbitration provision at issue. (D.I. 35-1, Ex. A at 1).[1] Although the arbitration provision is broad,

[1] *See* D.I. 35-1, Ex. A at 1 ("[this Agreement] by and between you, David Hugh Murray ('Mr. Murray,' 'You,' or 'Your'), and Xenture Inc . . . its parents, subsidiaries, affiliates, predecessors, successors, or assigns, and its and their respective current and/or former partners and/or

covering "all disputes . . . arising out of or relating to Mr. Murray's employment with Xenture Inc and/or its affiliates and the separation of that employment relationship," the arbitration provision applies to "Parties," a definition that does not include SSMG. (D.I. 35-1, Ex. A § 9(e)).[2]

To argue that SSMG can enforce the arbitration provision against Xenture, SSMG argues that SSMG is Murray's agent. (D.I. 35 at 5–6). In response, Plaintiffs contend that "SSMG did not submit evidence proving it was Murray's agent in connection with the Severance Agreement" and thus requested "limited discovery on these issues." (D.I. 43 at 6). SSMG does not object to this approach in its Reply Brief. (D.I. 47).

I agree that limited discovery is appropriate under these circumstances. "[A] motion to compel arbitration will be granted under the 12(b)(6) standard if it is apparent that the plaintiff's claims are subject to arbitration based on the face of the complaint or documents relied upon in the complaint, and the non-moving party has not come forward with evidence placing the agreement to arbitrate in dispute." *Concept Engineering LLC v. Pinterest, Inc.*, C.A. No. 21-1465 (MN), D.I. 27 at ECF 1 (citing *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013)).

Plaintiffs' First Amended Complaint does not aver that SSMG is an agent of Murray, and aside from a cursory reference, does not shed light on the "Continuity Document" that SSMG

---

shareholders/stockholders, including but not limited to Surefox North America Inc (collectively, 'Xenture Inc') (together Mr. Murray and Xenture Inc are the 'Parties')."').

2 *See* D.I. 35-1, Ex. A § 9(e) ("(e) Arbitration. The Parties agree to arbitrate all disputes, controversies, claims, and causes of action (collectively "Covered Disputes") in any federal, state or local court, or before any governmental agency, under applicable federal, state or local laws, arising out of or relating to Mr. Murray's employment with Xenture Inc and/or its affiliates and the separation of that employment relationship, including Covered Disputes Mr. Murray may have against Xenture Inc and the former and current agents, owners, employees, managers, directors, officers, attorneys, insurers, successors and assigns of Xenture Inc; and all Covered Disputes that Xenture Inc may have against Mr. Murray.").

insists requires arbitration of Plaintiffs' claims. SSMG is not a signatory to the Severance Agreement. And Plaintiffs have taken the position that the Severance Agreement "was procured by fraud and is voidable." (D.I. 43 at 4 n.4, citing *Surefox North America Inc., et al.*, C.A. No. 35-145, D.I. 1 ¶¶ 106, 114–122 (E.D. Va.)). Based on the limited record before me, it is not apparent that Plaintiffs' claims stem from or relate to the Continuity Document or are otherwise subject to the Severance Agreement. *See Concept*, D.I 27 at ECF 2 (citing *Hubbard v. Comcast Corp.*, No. 18-16090-RBK-KMW, 2019 WL 2866067, at *2 (D.N.J. July 3, 2019) (refusing to compel arbitration before discovery where the complaint lacked any reference to an arbitration agreement); *Andre v. Dollar Tree Stores, Inc.*, No. 18-142-VAC-CJB, 2018 WL 3323825, at *6 (D. Del. July 6, 2018) (denying a motion to compel arbitration "because the Complaint and its supporting documents say nothing about whether Plaintiff agreed to arbitrate these disputes"); *Rodriguez v. Mastronardi Produce USA, Inc.*, No. 20-01702, 2021 WL 2634403, at *2 (M.D. Pa. June 25, 2021) (opining that "even if the complaint did attach or rely on the agreement to arbitrate, the court would still be inclined to order limited discovery given one or more of the unconscionability arguments" raised by plaintiff).

When "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, [] the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Guidotti*, 716 F.3d at 776 (internal quotations marks omitted). Accordingly, I recommend denying SSMG's motion to compel arbitration without prejudice to renew after limited discovery. I also recommend denying SSMG's alternative motion to dismiss without prejudice to renew after any arbitrability issue is resolved.

## IV. CONCLUSION

For the reasons set forth above, I recommend denying SSMG's motion to compel arbitration (D.I. 34) without prejudice to renew after limited discovery. I further recommend that the parties engage in discovery limited to the issue of whether Surefox's claims are arbitrable. To that end, I further recommend that the parties meet and confer and, on or before April 1, 2026 submit a stipulation to the Court setting forth the deadlines for the completion of the limited discovery hereby ordered, and if sought by SSMG, for the filing of a motion for summary judgment under Rule 56 of the Federal Rule of Civil Procedure on the question of arbitrability. I recommend denying SSMG's alternative motion to dismiss (D.I. 34) without prejudice to renew after any arbitrability issue is resolved. I recommend denying Sciath Security's motion to dismiss (D.I. 31) as mooted by Sciath Security's dismissal from this action (D.I. 52).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: February 9, 2026

Laura D. Hatcher
United States Magistrate Judge